Honorable Judges of the Ninth Circuit, Counselors, good morning. My name is Charles Kinn. I represent Mr. Ginn against Attorney General Gonzales in this case. We have brought two arguments before the court. One is whether the BIA's decision that the petitioner's testimony, although credible, establishes neither past persecution nor a well-founded fear of future persecution is supported by substantial evidence. The second issue is whether the failure of the BIA to support its conclusion, denying relief with a reasoned explanation based upon and IJ, an immigration judge, found Mr. Ginn's testimony credible. The IJ also found a subjective fear that Mr. Ginn had of returning to China. The IJ found that there was no objective fear and it was not reasonable and then went into a litany of pretty much what I described in my brief as boilerplate analysis from what he called an individualized assessment. My brief describes how that individualized assessment is nothing more than a cut and paste of statements from country reports. What did we have that indicates that the Chinese were actually targeting him because of his creed? Only his testimony. He's the only witness in this case. So we appealed to IJ's testimony. His testimony was that he had been manipulated by others, not necessarily government people. Well, correct. Here's how he describes his oppression. His mother and father were accused of spies. His mother was put into prison. His father was hearing the cultural. This is a family relationship, familial relationship. There was economic depression, deprivation because of that situation where the children had to scrounge to survive. He also describes that the top officials in Yanban were Chinese and there were and he resented that. They were not allowed to put Korean ethnic at the top levels of government. But he was an autonomous region advocate. He was hit by a rod struck in a meeting that he organized and was a part of a clandestine meeting to try and seek autonomy. So he was an autonomous region advocate. The meeting was dispersed and he was never arrested. His friend was arrested and put in jail. And even when he went back to visit in 1993, his friend was still in prison. He was warned by his sister not to return to Yanban. He had called her from the airport in Beijing. If he was safe in Beijing, would that be sufficient? I would argue, Your Honor, that that would he was he would only be safe if he was not detected and he could be detected at any time. So he would always live with a cloud over his head and he would always feel the threat and fear that have a fear of future persecution. So we appealed that decision from the immigration judge. The BIA saw the limitations of the immigration judge's decision, because the immigration judge expressed no opinion one way or another about these individual circumstances. He just cited that boilerplate. So the BIA saw that error, I believe, and attempted to buttress the IJ's decision in two ways. But I would argue that the BIA failed to justify its decision by a fair estimate of the worth of the testimony of witnesses. The BIA makes its first attempt by saying that he when officials broke up the meeting, the respondent was able to run away without capture. Fine. OK. But then it goes on to state that the advocate of the respondents experiences and general discrimination described does not rise to the level of persecution to the respondent. Well, that's, I believe, totally inadequate. It doesn't discuss any of these seven, eight or nine other elements of past persecution, which are essential in a case of this type, because past harm not amounting to persecution is relevant to a determination of the well-foundedness of an applicant's fear of future persecution. So it just failed to go into that analysis, which I believe is error. That was the first attempt by the BIA to buttress the argument. The second attempt. OK. So based on that analysis, the BIA says there is no past persecution. Then it goes on to state that furthermore, there is no well-founded fear of future persecution because he was able to go back to China in 1993. And the language they used was experienced no persecution or other problems while there. Well, now I'm really confused because I think that the BIA failed to read and give any concern for the testimony of the witnesses, because the record is clear that he did face other problems while back in China. So that's a clear error of the BIA. Problems he faced when he went back to China in 1993 were that when he entered into Beijing and called home, his sister said, please don't come back because your friend is still in jail and you are at risk. That's one of the things that was a problem that the BIA fails to mention. So and I'm led to believe they don't even they didn't know it existed. And it's in the record. Another thing that they didn't. Another one was that when he went, his sister had to arrange to get his passport to leave. Now, the record indicates that they that there would have been five months while he was in China at that time. My calculations are that it was only about three months. And most of that three month period of time was spent while he was trying to procure $5,000 to arrange. Had his sister arranged to get this passport, which was not an official passport, as the record indicates in the testimony in front of the immigration judge. So clearly the BIA has not considered the circumstances. And it should properly consider the circumstances by law by under the case. And the Gabbani case, the Blower case. And most importantly, because they didn't mention any of the past harm that is relevant to a determination of well-foundedness of his fear of future persecution. They didn't mention any of his past harms in their analysis. I feel that the decision is incomplete and not fair. What's what's what is the immigration status of his wife? I don't know who the attorney is that handled that immigration matter, your honor, and I should have been able to at least try to find that. But I don't know the current status of his wife. And I do know that he has a child in Guam. And how many children do they have? Two daughters. Yeah. He's got he's got the U.S. citizen children born on two of them. Yes. Yeah, I believe so. And and. Does the application do you know include a claim of family planning problems with China? His his claim, as I heard, as I recall, honors did not have a family planning claim at the time. But if his two children would allow him to make such a claim and that would be a new a new request for relief. If he were to go back to China, he would face persecution for violating one child policy. Having two children, U.S. citizen children is still a violation of the one child policy. Have you sought to reopen that basis? No, I have not sought to reopen it at this time. Why not? I'm no longer in private practice. I am. I work for the attorney general of Guam as a prosecuting attorney now. So this is a case that Attorney General Moreland was kind enough to allow me to to finish from my own case. Private case. Well, I mean, you know, there might be something there and there might be. He might have. He might be able to get asylum. Wife gets political asylum. Yes. That's important. It's important to explore all those things. Yes. That's my private practice is not closed, but it's very close to closing. And I will perhaps call Mr. Jishin Lee to help me with that. He's here on Hawaii, but he's been very helpful to me in some of my cases. Who's been helpful to you? Mr. Jishin Lee. He's a he's an immigration attorney here on Guam. I mean, here in Hawaii, I call him on a regular basis when I want to send cases to him that I believe are deserve immediate attention. Thank you. Good morning. Stacey Paddock on behalf of respondent attorney general. Initially, I'd like to respond to your honor's questions about petitioner's wife. Prior to coming to Hawaii, I inquired with the Board of Immigration Appeals what the status was of the wife's case. Apparently, December of 2003, an immigration judge denied her claim and no appeal was ever made to the board of that case. Unfortunately, I don't have her alien number with me, but I can get that to opposing counsel if needed. In addition, regarding your issues on the. Where is she today? I don't know. I just was able to gain access with the children. I don't know, your honor. I believe opposing counsel said they're in Guam right now, but a motion to reopen could be a proper avenue in her case. If there's a change in circumstances, perhaps the birth of the children that could could permit the family some other avenues. Would the government join in that motion to reopen if if the circumstances were correct? Of course, if there's an avenue, a viable avenue for asylum and someone's eligible, the government would not oppose joining such a motion. But I don't know, unfortunately, any of the aspects or or basis of her claim. She's represented by an attorney where Guam. Unfortunately, I don't have any specifics of her case except for I was just able to pull up a database that had the date of her denial. But with a little research, we can we can get that information to the court. And I'm happy to do that. Thank you. Sure. Government contends that substantial evidence does not compel a contrary conclusion to the board's finding in this case. The petitioner failed to meet her burden of proving a well-founded fear of persecution in China. The board's decision is the decision before the court for review. It made an independent finding separate and aside from the immigration judge's decision. The board's decision states that in the aggregate, the experiences and general discrimination experienced by petitioner do not rise to the level of persecution. The board considered the past history experienced by petitioner's mother and father during the cultural revolution prior to his birth. The bad experiences from 66 to 69 of the family were completed by the time petitioner was born in 1971. So related to the cultural revolution, petitioner never himself, in fact, was harmed or experienced any any personal effects related to that. How do we know that? Well, he wasn't he wasn't born. You know, his parents talked to each other. Doesn't he listen? Perhaps. I guess maybe some sort of emotional issues is what you're referring to, perhaps. But for in related case law, for example, matter of Chen, which was decided by the board in 1989. That's a case where a young man when he was eight years old had older relatives, family members that experienced severe persecution. And he himself also experienced some level of harm. And in that case related to the cultural revolution, the board found that that experience of past persecution alone was enough to overcome any sort of necessary well-founded fear finding. And the board found as a matter of discretion to grant asylum in that case. Chen does not translate. How long ago was that? The board's decision was in 1989 in that case. Yes. It's a different world today. It is. But it was the same cultural revolution in China from that that case addressed in. Oh, he contends that he began to meet with other Koreans and that triggered the interest of the police who arrested one of them. And he was lucky enough to escape. Now, that may not amount to persecution of him, but it may give him a well-founded fear of future persecution. You don't have to be persecuted. Isn't that right? Correct, Your Honor. And in fact, 8 CFR Section 1208.13bi discusses exactly that. It states that if a fear of future persecution is not based on a past persecution, petitioner must meet his burden of proving the well-founded fear. So government contends that what happened to the parents during the cultural revolution is not the basis of this new claim. This claim, as discussed in petitioner's pre-briefing statement, which is in the record, that the only claim he's making is of a political opinion based on this 1991 incident. The 1991 incident where one friend was jailed, two Koreans who were not legally in China were deported. And one was beaten up. One may have been beaten up. Yes. And then his friend was jailed. It appears that from his testimony in 1993 when he did return voluntarily to China for a short period of time and telephoned his sister and she said, don't come home, you're at risk. It appeared that because his friend was still in jail at that time. In testimony on page 66 of the record, petitioner states that he now fears that authorities may be looking for him because his friend has escaped from jail. And that served, the question posed to him was, why after 11 years do you have any sort of fear of returning home? And petitioner state, well, my friend has escaped, is missing from jail. And I fear that they'll be looking for me as a result. So that does not support that from the 1991 incident per se, that his involvement at being at this meeting or political opinion serves as the basis of his claim, but perhaps that he might know where someone who has escaped from jail might be. Petitioner does not in this case meet his burden of proving through objective documentary specific evidence that he has a well-founded fear and that is the standard that this court has set forth in case law. Well, he doesn't have to have documentary evidence to create, to establish. It has to be an objectively reasonable fear, but it can be just based on his testimony. It could be based on specific and credible testimony. He has credible testimony, but there's not, there's not a lot of evidence. There's not a lot of detail. It's very vague. And in fact, the board states that in their decision. On this record, he has failed to meet the burden, because he has not provided, let's see where it is, that he has not provided the objectively reasonable evidence that is necessary in this case. The fact that he is credible does not meet his burden of proof without documentary evidence if his testimony does not provide enough detail. And the board's decision does, contrary to opposing counsel statements, that the board may not have considered all of the evidence of record, respondent contends that the board's decision adequately sets forth that it did consider the evidence in light of returning to 1990, returning in 1993, what's associated with that. And then again, that they, they are not adopting or affirming the IJ's decision, but do not disturb the ultimate conclusion in this case. Was this passport that he got, was that an official passport? Your Honor, it, the record is unclear. The, and my time is almost expired. May I finish answering your question? Thank you. The record, as far as we know, he has stated that the passport is in his name. He procured a valid exit permit for China. There's some question as to how he procured the visa that his sister paid money. Now we don't know whether it was a fraudulent passport or she paid money to expedite the receiving of the passport. It's unclear, but it is clear that he used his name, his actual name on the passport, and entered and exited, would have a valid exit permit to leave China. But you know, China, they got to keep track of a billion and a quarter billion people. Do they do that? I don't know, Your Honor. Were the current country reports made a part of the record? The, there are country reports in the record, and in addition, I believe it's exhibit for is the State Department letter that extracts particular information relevant to this particular claim as an ethnic Korean, which completely rebuts petitioner's testimony in which he states that Koreans in his province are restricted and have limited abilities and no one is elected in the government that is Korean, which is completely contradicted by the evidence of record in the State Department letter and the country reports that children of Korean ethnicity that live in this province can either attend Chinese schools or ethnic Korean schools, signs all over town are in both Korean and Chinese, and there are elected officials. It seems that there's complete tolerance of ethnic Koreans. And in fact, in my attempt to search to find any other type of ethnic Korean claims coming out of China, I was not able to find a single, a single claim from any circuit court. Anyway, thank you. May I just conclude? Petitioner claims that the board's decision, pardon me, respondent claims that the board's decision is adequate and that petitioner failed to meet his burden of proof. Thank you. Generalized reports of country conditions cannot substitute for individualized experiences. And Mr. Jin's individualized experiences are what's at issue here, not the generalized country reports, which are not specific as to conditions or those such factors. Thank you. Well, would he be, would he be, your client be eligible for suspension of removal of hardship grounds report because of two children? I've heard. There's some time limitations. I think there are time restrictions. He's a, he's a, I believe that he has to have a clear. He was in removal proceedings for too long. I think the minute he moves into removal proceedings, he's no longer eligible for cancellation of removal. I believe that's the way the law is written. So he was in removal proceedings back in as soon as he filed his asylum application. So that would prevent him from accruing 10 years of unobstructed residency. I think that's part of it. Would you be in a position for a, to make a motion to reopen? On my own, your honor, I would have to first find out. And I probably misspoke when I said I thought his, I said his children were in Guam. I only assumed they were in Guam, which is a bad thing to do, you know. But first I have to find out if his children and his wife are anywhere around. And then perhaps a motion to reopen would be appropriate under some set of circumstances where he were entitled to some relief. Well, my question is whether in your current position, you're able to continue this case. I would, I would not let the case drop, your honor. I would find somebody who could do it. That's for sure. If I could not, thank you. Where's your client now? He's in Guam. That much I know. Because I was, I was, when was the last time you talked to him? This week. This week. It was, and he doesn't speak good English, so I had my secretary speak to him. But he, he, we spoke and he, he was aware of this. What's he doing in Guam? He's, he's still working, gainfully employed, your honor. That much I know. What work does he do? I think he's in construction. He was an H1B worker when he first came. That's all I know. Thank you. The man will be admitted.
judges: Goodwin, B. Fletcher, Fisher